UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE FREEMAN (FORMERLY EUGENE HENDERSON),<br><br>                Plaintiff,<br><br>                v.<br><br>HOWARD UNIVERSITY COLLEGE OF MEDICINE,<br><br>                Defendant. | Case No. 1:21-cv-02191 (CRC) |

## MEMORANDUM OPINION

Plaintiff Eugene Freeman, a former student at the Howard University College of Medicine, brings this lawsuit challenging his August 2019 dismissal from the school's medical program after he failed to complete the first two years of his studies within the time period allotted by Howard. Specifically, Freeman alleges that Howard breached an implied contract with him by failing to adhere to the academic advising guidelines set forth in accreditation standards issued by the Liaison Committee on Medical Education. He also alleges that his dismissal violated his procedural and substantive due process rights. Howard moves to dismiss the complaint for failure to state a claim. The Court will grant the motion.

### I. Background

Freeman enrolled as a student at the Howard University College of Medicine ("Howard" or the "College of Medicine") in 2015. Compl. ¶ 6–7. During his first year at Howard, Freeman's mother suffered a debilitating stroke, which he claims disrupted his studies and eventually led to his dismissal from Howard at the end of the fall 2016 semester. Id. at ¶¶ 8–9. In 2017, Freeman was readmitted to Howard and began a second attempt at obtaining his medical degree, id. at ¶ 10, but he continued to struggle to complete his course of study.

In particular, Freeman had difficulty passing the first installment of the United States Medical Licensing Examinations ("USMLE"). Id. ¶¶ 11, 14. The USMLE is a national, three-step examination for medical licensure that "assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and disease and that constitute the basis of safe and effective patient care."[1] Although the USMLE is administered by the Federation of State Medical Boards and the National Board of Medical Examiners, not by Howard,[2] Section XVII of Howard's Policies and Procedures Manual requires that all students must pass Step 1 of the USMLE prior to the start of their junior year. Mot. to Dismiss Ex. 1, ECF No. 5-2, at 54.[3] Additionally, Howard's policies require that students complete the first two years of the medical school curriculum within four academic years, including approved leaves of absence. Id. at 70. So, because all students must pass Step 1 of the USMLE before they can start junior year, students effectively have a four-year timeframe in which to pass USMLE Step 1.

---

[1] U.S. Med. Licensing Examination, https://www.usmle.org (last visited Sept. 15, 2022). Freeman's complaint provides no description of the USMLE, but the Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[2] About the USMLE, U.S. Med. Licensing Examination, https://www.usmle.org/about-usmle (last visited Sept. 15, 2022).

[3] Although Freeman's complaint does not quote Howard's policies, the school's policy concerning the timely completion of the USMLE Step 1 is central to his claims. See Compl. ¶¶ 14, 16, 19, 30–31, 42. Without converting a motion to dismiss into one for summary judgment, "the Court may consider 'documents attached to or incorporated in the complaint'" and "documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." Richter v. Catholic Univ. of Am., No. 18-00583 (RJL), 2019 WL 481643, at *2 (D.D.C. Feb. 7, 2019) (quoting Harris v. Amalgamated Transit Union Loc. 689, 825 F. Supp. 2d 82, 85 (D.D.C. 2011)). The Court therefore refers to Howard's policies as well as other materials appended to Howard's motion to dismiss that were incorporated by reference into Freeman's complaint.

After his return to Howard in 2017, Freeman contacted Dean Debra H. Ford about his low scores on his USMLE Step 1 practice exams. Compl. ¶ 11. After discussing how Freeman might improve his scores, Dean Ford eventually recommended that he take a leave of absence, id., which he did starting in 2018, id. ¶ 34; see also Mot. to Dismiss Ex. 3, ECF 5-4 (approving leave of absence effective July 16, 2018 through July 14, 2019). In the letter approving this leave of absence, Dr. Ford noted that, consistent with Howard's policies, Freeman "must have a passing USMLE Step 1 score by June 26, 2019" to start his junior year in the fall of 2019. Mot. to Dismiss Ex. 3, ECF 5-4.

Freeman took the USMLE Step 1 examination but learned in July 2019 that he had not earned a passing score. Compl. ¶ 13. He then contacted another Howard administrator, Dean David A. Rose, to seek additional time to study for another attempt at the exam. Id. ¶ 14. Dean Rose recommended that Freeman apply for a second leave of absence, which he did. Id. Shortly thereafter, Freeman received a letter from the Howard administration informing him, first, that his leave request had been denied on the basis that "[r]equests for leaves of absence will not be approved for more than one year." Id. ¶ 15; Mot. to Dismiss Ex. 4, ECF 5-5. The letter further informed Freeman that, because he had not completed his first two years of study within the four years since his matriculation in July 2015, the Committee on Student Promotions and Graduations had voted to dismiss him from the College of Medicine. Mot. to Dismiss Ex. 4, ECF 5-5; see also Compl. ¶ 15–16. Freeman appealed his dismissal to the Student Grievance Committee, which denied the appeal in September 2019. Compl. ¶ 17.

In August 2021, Freeman filed the present complaint alleging three causes of action against the College of Medicine. First, Freeman claims that by recommending that he take a second leave of absence and failing to inform him that he must have a passing USMLE Step 1

3

score by the summer of 2019, Howard breached an implied contract with him to adhere to the academic advising standards set forth in the Liaison Committee on Medical Education's accreditation standards.  Id. ¶¶ 23–31.  Additionally, Freeman claims that Howard's decision to dismiss him violated both his procedural and substantive due process rights.  Id. ¶¶ 32–42.  Howard moves to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  See Mot. to Dismiss at 1.  The motion is ripe for the Court's consideration.

## II. Legal Standards

Rule 12(b)(6) requires dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When evaluating a 12(b)(6) motion, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In reviewing a Rule 12(b)(6) motion, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor."  Sissel v. U.S. Dep't of Health & Hum. Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).  But the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint," Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994), nor must the Court "accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986).

### III. Analysis

Freeman alleges that Howard's conduct leading up to and following his dismissal from the College of Medicine gives rise to breach of contract and due process claims. Freeman's claims are without merit.

### A. Breach of Contract

Under District of Columbia law, "[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Brown v. Sessoms, 774 F.3d 1016, 1024 (D.C. Cir. 2014) (quoting Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009)). In its motion to dismiss, Howard contends that its academic decision to dismiss Freeman is entitled to deference and, further, that Freeman has failed to allege either an enforceable contract, a duty owed to him, or a breach. Mot. to Dismiss at 11–17.

#### 1. Academic Deference

At the outset, the Court acknowledges that a university's academic decisions, including the decision to dismiss students for academic reasons, are typically entitled to judicial deference. See, e.g., Jung v. George Washington Univ., 875 A.2d 95, 108 (D.C. 2005); Alden v. Georgetown Univ., 734 A.2d 1103, 1108–09 (D.C. 1999). For that reason, a plaintiff challenging an academic dismissal must show that there "was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." Chenari v. George Washington Univ., 172 F. Supp. 3d 38, 47 (D.D.C. 2016) (quoting Alden, 734 A.2d at 1109). Howard invokes this precedent in urging the Court to dismiss Freeman's breach of contract claim on the basis of deference alone.

5

But there is an important difference between Freeman's breach of contract claim and the challenges to academic dismissals cited by Howard. Those cases, such as Alden and Chenari, generally involved a student's challenge to the university's dismissal decision itself. For instance, the plaintiff in Alden argued that Georgetown University Medical School's decision to dismiss him was not a "result of a legitimate academic judgment" but rather "was premised on a clerkship evaluation which was motivated by ill-will on the part of the resident evaluator." 734 A.2d at 1107. Similarly, in Chenari, the plaintiff challenged George Washington University's decision to dismiss him from medical school after he continued working on an exam after the expiration of time because, in his view, that conduct did not constitute cheating under the university's regulations. 172 F. Supp. 3d at 43–44, 48–49; see also Hajjar-Nejad v. George Washington Univ., 37 F. Supp. 3d 90, 115–18 (D.D.C. 2014).

Here, by contrast, Freeman's breach of contract claim does not turn directly on Howard's decision to dismiss him or its reasons for doing so; Freeman does not appear to dispute that he failed to pass his USMLE Step 1 exam on time, as required by Howard's policies. Instead, Freeman's contract claim alleges that Howard breached contractual obligations to him by maintaining an ineffective system of academic advising, which, he says, led to his dismissal. Compl. ¶¶ 23–31. Because Freeman's breach of contract claim does not challenge the dismissal decision itself but rather ancillary conduct on Howard's part surrounding that decision, the case law requiring a university to show only a rational basis for its dismissal decision is an awkward fit with this case. The Court therefore will determine whether Freeman has alleged the existence of a valid contract between himself and Howard.

    *2. Existence of a Valid Contract*

As a general matter, "the relationship between a university and its students is contractual in nature." Manago v. District of Columbia, 934 A.2d 925, 927 (D.C. 2007) (quoting Basch v. George Washington University, 370 A.2d 1364, 1366 (D.C.1977)). That "general proposition, however, does not absolve plaintiff of his burden" to "prov[e] that the parties entered into an enforceable contract." Richter, 2019 WL 481643, at *3 (alteration in original); see also Shaffer v. George Washington Univ., 27 F.4th 754, 763 (D.C. Cir. 2022) (observing that "'the mere fact that [a] bulletin contain[s] language' on a topic 'is not enough to support a finding that the language amounted to a contractual obligation'" (second alteration in original) (quoting Basch, 370 A.2d at 1366–67)). And for a contract to be enforceable, "the parties must (1) express an intent to be bound, (2) agree to all material terms, and (3) assume mutual obligations." Richter, 2019 WL 481643, at *3 (quoting Dyer v. Bilaal, 983 A.2d 349, 356 (D.C. 2009)). Absent a valid agreement, Freeman cannot maintain a breach of contract action. Cambridge Holdings Grp., Inc. v. Fed. Ins. Co., 357 F. Supp. 2d 89, 94 (D.D.C. 2004).

Freeman alleges that he "entered into an implied agreement" with Howard "to pursue his studies in good faith in exchange for a degree." Compl. ¶ 24. "The terms of the implied contract," Freeman alleges, arise not from any agreement between himself and Howard but rather from the Liaison Committee on Medical Education's ("LCME") accreditation standards. Id. ¶ 27. Specifically, Freeman alleges that Howard's academic advising—in particular the advice he received from Dean Rose and Dean Ford regarding his leaves of absence—was contrary to LCME Standard 11.1. Id. ¶ 27. Standard 11.1, which governs "Academic Advising," states that accredited medical schools should have "an effective system of academic advising in place for medical students that integrates the efforts of faculty members, course and

7

clerkship directors, and student affairs staff with its counseling and tutorial services" and "ensures that medical students can obtain academic counseling from individuals who have no role in making assessment or promotion decisions about them." Id.; Mot. to Dismiss Ex. 2, ECF No. 5-3, at 18.

Freeman's theory is that because the College of Medicine is accredited by the LCME, it must therefore "abide by its guidelines" for academic advising. Compl. ¶ 26. Freeman alleges that Howard breached those guidelines—and thus breached a contract with *him*—1) when Dean Rose recommended that he apply for a second leave of absence not permitted by Howard's policies; 2) when Dean Ford failed to inform him that she would be involved in his dismissal hearing; and 3) when Dean Rose failed to inform him that he must have a passing USMLE Step 1 score by the summer of 2019 to avoid dismissal. Id. ¶¶ 28–31.

Freeman fails to state a breach of contract claim because the LCME accreditation standards do not constitute an enforceable contract between him and the College of Medicine. Although the student-university relationship is contractual in nature, whether any particular university policy or guideline is "part of the contractual obligations between the students and the university" depends "upon general principles of contract construction." Mosby-Nickens v. Howard Univ., 864 F. Supp. 2d 93, 98 (D.D.C. 2012) (quoting Basch, 370 A.2d at 1367). And, as stated above, a valid contract exits "only where there is 'both (1) agreement as to all material terms and (2) intention of the parties to be bound.'" Id. at 99 (quoting Jack Baker, Inc. v. Off. Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1995)).

Here, Freeman has alleged no facts showing mutual agreement or that Howard has expressed an intent to be bound by the terms of the LCME accreditation standards. Id. Freeman's complaint states only the bare "legal conclusion couched as a factual allegation" that

8

the College of Medicine, as an institution accredited by the LCME, "has to abide by its guidelines." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556); Compl. ¶ 25–26. But as another court in this district observed when assessing a claim premised on non-compliance with the LCME standards, "[t]his is not a case in which a student is attempting to hold his school to its own published policies." Bain v. Howard Univ., 968 F. Supp. 2d 294, 299 (D.D.C. 2013). Rather, Freeman "is trying to hold Howard to LCME standards," arguing that "because the LCME chose to accredit Howard, Howard was obligated to follow LCME guidelines." Id. at 299–300. That theory "gets the relationship between Howard and the LCME backwards[;]" an "accrediting institution evaluates a school, and is free to withhold or rescind accreditation as it sees fit." Id. at 300. Freeman "offers no reason to conclude that the school, by accepting accreditation, promises its students that it will adhere to the accrediting body's standards." Id. In other words, Freeman has not alleged facts establishing "Howard's intent to be bound" by the terms of the LCME standards. Mosby-Nickens, 864 F. Supp. 2d at 99.

Nor do the LCME standards "reflect obligations mutually assumed by the [medical] school as well as its students." Richter, 2019 WL 481643, at *3. Rather, the LCME standards are intended only "as a means for the [LCME] to communicate its expectations" regarding accreditation to schools, not to set forth legal rights or obligations binding on either Howard or its students. Mosby-Nickens, 864 F. Supp. 2d at 99; see also Basch, 370 A.2d at 1366–68. As explained in the introduction to the LCME standards, the "language of each of the 12 LCME accreditation standards is a concise statement of the *expectations* of that standard." Mot. to Dismiss Ex. 2, ECF No. 5-3, at iv (emphasis added). In other words, the standards that Freeman cites merely "identify the variables" that LCME "examine[s] in evaluating a medical education program's" continued eligibility for accreditation. Id. "[W]ords that merely 'express[] an

expectancy' regarding future conduct do not suffice to create a contractual obligation 'susceptible of enforcement.'" Shaffer, 27 F.4th at 763 (second alteration in original) (quoting Basch, 370 A.2d at 1368); see also Clampitt v. American Univ., 957 A.2d 23, 38 n.17 (D.C. 2008) (employee policy manuals were no more than guidance and did not constitute "terms of an implied contract"). Because the LCME standards contain neither language "that demonstrates Howard's intent to be bound" by their terms nor "any other indication, such as signatures of the parties, that would demonstrate such intent," Freeman has failed to plead the existence of an enforceable contract. Mosby-Nickens, 864 F. Supp. 2d at 99.

Freeman contends that it is inappropriate at the motion to dismiss stage to consider Howard's argument that the LCME standards are not a valid contract because that argument "speak[s] to the facts of the case that are in dispute between the two parties." Pl.'s Opp. at 7. Freeman misunderstands the applicable legal standard. "The party asserting the existence of an enforceable contract . . . bears the burden of proving that the parties entered into an enforceable contract," including alleging that there is "agreement as to all material terms" and "an intention of the parties to be bound." Ponder v. Chase Home Fin., LLC, 666 F. Supp. 2d 45, 48 (D.D.C. 2009). And "'whether an enforceable contract exists' in the first place 'is a question of law'" that the Court is entitled to resolve at the motion to dismiss stage. REO Acquisition Grp. v. Fed. Nat'l Mortg. Ass'n, 104 F. Supp. 3d 22, 28 (D.D.C. 2015) (quoting Kramer Assocs., Inc. v. Ikam, Ltd., 888 A.2d 247, 251 (D.C. 2005)). For the reasons just discussed, Freeman's bare assertions that the LCME standards constitute a valid contract are insufficient to state a breach of contract claim.

The Court will therefore dismiss Count I of the complaint.

B.  Procedural and Substantive Due Process

Freeman's two remaining counts allege that Howard's decision to dismiss him from the College of Medicine violated his procedural and substantive due process rights under the Fifth Amendment.  Freeman claims that Howard afforded him constitutionally inadequate process leading up to and following his dismissal, for example, by failing to provide him with transcripts of the dismissal hearing.  Compl. ¶¶ 32–38.  He also alleges that the College of Medicine violated his substantive due process rights by dismissing him after Dean Rose advised him to apply for a second leave of absence, which was not permitted under Howard's policies.  Id. ¶¶ 39–42.  Both of these claims fail.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  But that guarantee "only applies to government action."  Trazell v. Wilmers, 975 F. Supp. 2d 133, 142 (D.D.C. 2013) (citing Shelley v. Kraemer, 334 U.S. 1, 13 (1948)).  It is well-established that Howard is a private institution, not a government actor, and is therefore not bound by the Due Process Clause.  See, e.g., Williams v. Howard Univ., 528 F.2d 658, 660 (D.C. Cir. 1976) (per curiam); Althiabat v. Howard Univ., 76 F. Supp. 3d 194, 197 (D.D.C. 2014) ("Howard University is not a state actor subject to constitutional restrictions."); Allison v. Howard Univ., 209 F. Supp. 2d 55, 62 (D.D.C. 2002) ("Indeed, as long ago as 1935, the D.C. Circuit determined that Howard University is a private corporation."); Remy v. Howard Univ., 55 F. Supp. 2d 27, 29–31 (D.D.C. 1999) ("Applying the Lebron standards, as well as traditional public function, symbiotic relationship, and nexus tests, the court affirms Howard University's private status, reasserting years of similar holdings."); Giles v. Howard Univ., 428 F. Supp. 603, 604 (D.D.C. 1977) ("In this Circuit, many courts have held that Howard University is not sufficiently

involved with the Federal Government to make its actions equivalent to Federal Government actions and thus subject to the restraints of the fifth amendment."); Sanford v. Howard Univ., 415 F. Supp. 23, 29 (D.D.C. 1976) ("A showing of general governmental involvement in a private educational institution is not enough to convert essentially private activity into governmental activity for purposes of a due process claim, and Howard's essentially private status must be recognized.").

Freeman alleges no facts to alter the conclusion of the legion cases holding that Howard is a private actor. Indeed, Freeman's complaint itself identifies Howard as "a private institution of higher learning located in the District of Columbia," Compl. ¶ 2, and alleges no government funding, government authority, public function, or nexus to the government that would affect Howard's private status, see Remy, 55 F. Supp. 2d at 29–31.[4] The Court therefore dismisses Freeman's due process claims.[5]

C. Leave to Amend

Finally, in his opposition, Freeman makes a perfunctory request for leave to file an amended complaint. Pl.'s Opp. at 10. Leave to amend is not called for when amendment would be futile. Vince v. Mabus, 956 F. Supp. 2d 83, 92 (D.D.C. 2013). "Where a court determines

---

[4] Freeman is mistaken that dismissal is inappropriate because he could potentially uncover, in discovery, evidence that Howard was a state actor in this case. Pl.'s Opp. at 8. Freeman's complaint is bereft of any factual allegations supporting that conjecture. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a claim for relief. Iqbal, 556 U.S. at 678.

[5] Freeman's remaining contention—that Howard's motion to dismiss was untimely—is meritless. Pl.'s Opp. at 10. Because Howard's 60-day deadline from the date it waived service of summons fell on Sunday, October 17, 2021, Howard timely filed its motion to dismiss on the next weekday, October 18. See Fed. R. Civ. P. 6(a)(1)(C) (time period ending on a weekend of legal holiday "continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); Waiver of Service, ECF No. 3 (waiver of service filed August 18, 2021).

that the assertion of additional facts consistent with the challenged pleading would not remedy the deficiency, dismissal of a claim with prejudice is appropriate." Carty v. Author Sols., Inc., 789 F. Supp. 2d 131, 136 (D.D.C. 2011).

Here, no further factual allegations could cure the deficiencies in Freeman's claims. As stated above, the standards that the LCME, a third-party organization, uses to determine whether to accredit medical schools do not comprise the terms of an implied contract between Freeman and Howard, and a private university's decision to dismiss one of its students is not a result of government action. What is more, Freeman's cursory request for leave to amend does not comply with the local rules of this Court, which require that a "motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended." D.D.C. Local R. 15.1; accord id. R. 7(i). The Court therefore dismisses Freeman's complaint, and the case, with prejudice. Bradley v. D.C. Pub. Schs., 87 F. Supp. 3d 156, 162–63 (D.D.C. 2015) (denying leave to amend for noncompliance with local rules).

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's [5] Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 16, 2022